UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRITNEY COLE, : | |
| : | CIVIL ACTION |
| Plaintiff, : | |
| : | CASE NO.: |
| v. : | |
| : | |
| SMI SERVICES OF DELAWARE, LLC, : | **JURY TRIAL DEMANDED** |
| A Delaware limited liability company, : | |
| and : | |
| SMI SERVICES, LLC, : | |
| A Maryland limited liability company, : | |
| : | |
| Defendants. : | |

## COMPLAINT

Plaintiff, Britney Cole (hereinafter referred to as "Plaintiff" unless indicated otherwise), hereby complains as follows against SMI Services of Delaware, LLC and SMI Services, LLC (hereinafter referred to as "Defendants" unless indicated otherwise) and avers as follows.

### INTRODUCTION

1. This action has been initiated by Plaintiff against Defendants for violations of the Americans with Disabilities Act ("ADA" -42 USC §§ 12101 *et. seq.*), and the Family and Medical Leave Act ("FMLA" - 29 U.S.C. §§ 2601 *et seq.*), and Title VII of the Civil Rights Act of 1964 ("Title VII - 42 U.S.C. §§ 2000d *et. seq.*). As a direct consequence of Defendants' unlawful actions, Plaintiff has suffered injuries and seeks damages as set forth herein.

### JURISDICTION AND VENUE

2. This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's claims because this civil action arises under laws of the United States.

3. This Court may properly maintain personal jurisdiction over Defendant SMI Services of Delaware, LLC because it is a Delaware limited liability company. Its registered agent is Stephan G. Principe. Its registered address is 127 Dixon Street, Selbyville, Delaware 19975.

4. This Court may properly maintain jurisdiction over Defendant SMI Services, LLC because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over that Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in <u>International Shoe Co. v. Washington</u>, 326 U.S. 310 (1945) and its progeny. Defendant SMI Services, LLC is a Maryland limited liability company. Its registered agent is Stephan G. Principe. Its registered address is 5609 N. DuPont Highway, #6, Smyrna, Delaware 19977.

5. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district, and in addition, Defendants are deemed to reside where they are subject to personal jurisdiction, rendering Defendants residents of the District of Delaware.

6. Plaintiff is proceeding herein under the ADA and has properly exhausted her administrative remedies with respect to such claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety (90) days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

**PARTIES**

7. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

8. Plaintiff resides at 51 Woodlawn Avenue, Milroy, Pennsylvania 17063.

9. Defendant SMI Services of Delaware, LLC is a company with two locations in Delaware that engages in the business of providing erosion and sediment control for builders, developers and contractors. The two locations are as follows:

    a. 5609 N. Dupont Pkwy, Unit 6 Smyrna, DE 19977; and

    b. 20 Railroad Avenue, Selbyville, DE 19975.

10. Defendant SMI Services, LLC, is an environmental site management company headquartered at 17435 Mill Branch Place, Bowie, Maryland 20716.

11. Upon information and belief, because of their interrelation of operations, common ownership or management, centralized control of labor relations, common financial controls, and other factors, Defendants are sufficiently interrelated and integrated in their activities, labor relations, ownership and management that they may be treated as a single and/or joint employer for purposes of the instant action.

12. At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

**FACTUAL BACKGROUND**

13. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

14. Plaintiff was hired by Defendants on or about August 30, 2017, as an Office Manager.

15. Plaintiff remained employed with Defendants in her same position until she was unlawfully terminated on or about October 18, 2019.

16.     During her approximate two-year tenure with Defendants, Plaintiff performed her job well and was a dedicated and hard-working employee who lacked a history of progressive discipline.

17.     At all times during her employment with Defendants, Plaintiff was directly supervised by Mark Ricker (Director of Sales Development – hereinafter "Ricker") and indirectly supervised by Heather Lyons (Chief Financial Officer – hereinafter "Lyons").

**ADA/FMLA Violations**

18.     In or about early September of 2019, Plaintiff suffered from two mini strokes that negatively impacted the entire right side of her body, her memory, and her ability to perform some daily life activities, including but not limited to talking and moving her right side.

19.     As a result of Plaintiff's aforesaid serious health conditions, she requested from Defendants' management a medical leave of absence to care for and treat for her aforesaid serious health conditions – which commenced on or about September 3, 2019 (an FMLA-qualifying leave of absence and a reasonable accommodation under the ADA).

20.     During her aforesaid medical leave, Plaintiff kept Defendants' management, including but not limited to Ricker, Lyons and Patty King (Human Resources Manager – hereinafter "King") apprised of her aforesaid serious health conditions, treatment regimen (including occupational therapy and physical therapy) and her return to work status.

21.     In fact, Plaintiff regularly e-mailed Defendants' management doctor's note regarding her return to work date and had verbal and text message communications regarding the status of her health.

22. Despite informing Defendants' management that she intended to return to work following her medical leave, Plaintiff learned during her medical leave that Defendants began to interview people to perform her job.[1]

23. In or about mid-October of 2019, after Plaintiff presented a note to Defendants' management indicating that she would be out of work for another two weeks to care for and treat for her aforesaid, serious health conditions, she was abruptly terminated.

24. Plaintiff was informed that her termination was because there were invoices that had not been processed at the end of August.

25. Following Plaintiff's filing of her Charge of Discrimination with the EEOC, Defendants added additional reasons for Plaintiff's termination, claiming that Plaintiff had "failed to perform some of her primary job duties including, without limitation, failing to timely process a significant number of invoices [dating back to July of 2019] and failing to deposit a check made payable to the company."

26. Defendants also claimed in their position statement submitted to the EEOC (in response to Plaintiff's Charge of Discrimination) that Plaintiff was not a hard-working and dedicated employee and that after June of 2019, her work performance began to steadily decline – which is completely false.

27. The reasons offered by Defendants for Plaintiff's termination (at the time of her termination and in response to her Charge of Discrimination) are completely pretextual as (1) Plaintiff was never issued any progressive discipline during her employment with Defendants; (2) Plaintiff was issued a performance evaluation in April of 2019, and was rated a 4 or 5 (the two highest, possible ratings) in every category; (3) Plaintiff was issued another performance

---

[1] Upon information and belief, one of the individuals interviewed while Plaintiff was on medical leave (discussed *supra*) was hired for Plaintiff's position following her termination (about a week after the interview).

5

evaluation in August of 2019, and was again rated a 4 or 5 in every category; (4) Plaintiff was terminated while she was still on a medical leave of absence; and (5) Plaintiff was terminated during a time when she was confiding in Defendants' management about her health conditions and need for accommodations.

### Sexual Harassment/Retaliation

28. In addition to the forgoing, Plaintiff was also subjected to sexual harassment by Ricker, who is also Defendants' owner's brother-in-law.

29. For example, during the course of her employment with Defendants, Plaintiff was subjected to obscene and unwelcomed and sexually inappropriate advances, gestures, and comments by Ricker on a continuous basis.

30. By way of specific example (but without limitation):

   a. Ricker would make comments about Plaintiff's breasts on a continuous basis, including but not limited to commenting on the size of Plaintiff's breasts;

   b. Ricker would also ask to "take a peek" or see Plaintiff's breasts;

   c. Ricker attempted to grab Plaintiff's breasts;

   d. On one occasion, Ricker asked Plaintiff to watch him "jerk off" in his office "to porn";

   e. Ricker would tell Plaintiff that Defendants needed to send her out in the field because with her "big boobs," male clients would melt in her hands, especially if she "wore a tight shirt";

   f. Ricker would tell Plaintiff that he had dreams about her;

g. When Plaintiff was required to occasionally go to New Jersey in order to assist Defendants' NJ facility, Ricker would also sometimes be required to go at the same time as Plaintiff. When Ricker and Plaintiff were scheduled to go to the NJ facility at the same time, Ricker would consistently suggest that he and Plaintiff share a hotel room; and

h. During Defendants' last Christmas party, Ricker put his hand on Plaintiff's leg and began to move it upwards towards her genitalia.

31. Plaintiff rejected and objected to Ricker's sexual comments and gestures on multiple occasions; however, his behavior did not cease.

32. Instead Ricker would often respond to Plaintiff's complaints, objections, or rejections of his sexually harassing behavior with "Oh come on . . ." or begin to treat Plaintiff very nasty.

33. This aforesaid treatment continued up until the point that Plaintiff was abruptly and pretexually terminated from her employment with Defendants (as discussed *supra*).

34. Based on the foregoing, Plaintiff believes and therefore avers that she was terminated because of her actual/perceived/record of disabilities, in retaliation for requesting reasonable accommodations, as a direct result of Defendants' failure to accommodate Plaintiff's health conditions, and/or in retaliation for objecting to sexual harassment and/or rejecting Ricker's sexual advances.

**Count I**
**Violations of the Americans with Disabilities Act, as amended ("ADA")**
**(Actual/Perceived/Record of Disability Discrimination & Retaliation)**
**-Against Both Defendants-**

35. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

36. Plaintiff suffered from qualifying health conditions under the ADA (as amended), which (at times) affected her ability to perform some daily life activities (as discussed *supra*).

37. Plaintiff requested reasonable accommodations, in the form of time off from work.

38. Plaintiff was terminated from her employment (1) shortly after apprising Defendants' management of her qualifying health conditions; (2) in close proximity to when she requested reasonable accommodations; (3) before she could return from a medical leave of absence; and (4) for completely pretextual reasons.

39. Plaintiff believes and therefore avers that her employment was terminated by Defendants because of: (1) her known and/or perceived disabilities; (2) her record of impairment; (3) her requested accommodations; and/or (4) Defendants' failure to properly accommodate Plaintiff's qualifying health conditions.

40. These actions as aforesaid constitute violations of the ADA, as amended.

## Count II
## Violations of the Family and Medical Leave Act ("FMLA")
**(Retaliation & Interference)**
**-Against Both Defendants-**

41. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

42. Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

43. Plaintiff requested leave from Defendants, her employers, with whom she had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

44. Plaintiff had at least 1,250 hours of service with Defendants during her last full year of employment.

45. Defendants are engaged in an industry affecting commerce and employed at least fifty (50) or more employees within 75 miles of the location where Plaintiff worked for Defendants for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

46. Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

47. Defendants committed interference and retaliation violations of the FMLA by *inter alia*: (1) by taking actions towards her that would dissuade a reasonable person from exercising her rights under the FMLA; (2) failing to inform Plaintiff of her individualized FMLA rights, which constitutes a failure to follow proper notice, designation, and information regulations of the FMLA; (3) considering Plaintiff's FMLA-qualifying leave in making the decision to terminate her; (5) terminating Plaintiff's employment in retaliation for requesting and/or utilizing FMLA-qualifying leave.

48. These actions as aforesaid constitute violations of the FMLA.

### Count III
### Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")
### (Sexual Harassment – Hostile Work Environment and Retaliation)
### -Against Both Defendants-

49. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

50. During her employment with Defendants, Plaintiff was subjected to severe and pervasive sexual gestures, advances, and comments by her direct supervisor, Ricker, such that she was subjected to a hostile work environment.

51.     Plaintiff specifically opposed, rejected, and complained of Ricker's inappropriate sexual comments/advances/gestures; however, his behavior did not cease, and she continued to be subjected to a hostile work environment.

52.     Shortly after rejecting, opposing, and/or complaining of Rickers' sexual advances, comments, and gestures, Plaintiff was discharged from her employment with Defendants for completely pretextual reasons.

53.     Plaintiff believes and therefore avers that she was discharged from her employment with Defendants because she refused and/or objected to Ricker's sexual advances, comments, and gestures.

54.     Defendants' actions as aforesaid constitute violations of Title VII.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.      Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, pension(s), reinstatement, and seniority;

B.      Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct;

C.      Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate, including for emotional distress;

D.      Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

E.  Plaintiff shall be permitted to have a trial by jury as requested in the caption of this Complaint.

 

**LAROSA & ASSOCIATES LLC**
JOHN M. LAROSA, ESQ.
<u>/s/ John M. LaRosa</u>
Delaware Bar ID No. 4275
1225 King Street, Suite 802
Wilmington, DE 19801-3246
(302) 888-1290
(302) 655-9329 (fax)
JLR@LaRosaLaw.com

**KARPF, KARPF & CERUTTI, P.C.**
CHRISTINE E. BURKE, ESQ.
*PARTNER*
3331 Street Road
Two Greenwood Square
Suite 128
Bensalem, PA 19020
(215) 639-0801 phone
(215) 639-4970 fax
www.karpf-law.com

*Pro Hac Vice* Motion Pending

*Attorneys for Plaintiff*

Dated: May 28, 2020